23064. INTERNATIONAL CORRESPONDENCE SCHOOLS
*v.* WRIGHT.

DECIDED NOVEMBER 18, 1933.

*Handley C. Harrison, Crim & Harrison,* for plaintiff.
*M. U. Mooty,* for defendant.

GUERRY, J. ■ The International Correspondence Schools brought an action against E. O. Wright on a contract of guaranty, alleging that G. W. Wright, a minor, had purchased a course of instruction in a complete "Heating Scholarship" from the plaintiff, and that E. O. Wright guaranteed the payment of the purchase-price in accordance with the terms of the application for such course made by G. W. Wright, and that E. O. Wright failed to pay the purchase-price, although demand had been made upon him. The contract sued on guaranteed to the International Correspondence Schools "the payment of the price agreed to be paid for the within-mentioned scholarship in accordance with the terms of the within application." The purchase-price of the "Heating Scholarship" was $182,—$6 to be paid in cash and $6 every four weeks until full payment of the purchase-price. $34 was paid on the contract. The contract provided that the company was to supply "a complete set of instruction papers and examination questions, in pamphlet form, which are to be supplied to me in parts, as I proceed with my studies." The petition fails to affirmatively allege a full compliance with the terms of the contract. The trial judge, at the conclusion of the evidence, directed a verdict for the defendant, on the ground that the plaintiff did not make out a case, because it failed to prove a completion of the contract sued on. The material evidence of the plaintiff on this point was as follows: "With reference to [the] contracts of the defendant [I] will say that the original enrollment was for a course of instruction in Structural Drafting. In that course we forwarded to him all the

books and papers for completion of Elements of Arithmetic, Fractions and Decimals. Thereafter, as evidenced by the transfer contract, he was transferred to a Complete Heating course of instruction, whose transfer was effective as of January 12, 1929, and we thereafter furnished him with Tables and Formulas, numbers 1, 2, and 3 for this course. We also sent him additional work as follows: Rules and Roots, Mensuration, and Formulas. . . We therefore did not send additional work in this course to this student, because previous work which had been sent him was not completed. We furnished all of the books and lesson papers, etc., called for by the contract, in so far as the student had completed the course, and we stood ready to furnish the balance as and when the student progressed." The material portion of the evidence for the defendant, on this point, was as follows: "No, the International Correspondence Schools did not send any literature to me or to George under this contract that I signed. . . He [the son] has not received anything yet, and I have not received anything yet."

We do not think there is any need for an extended discussion of the law or citation of numerous authorities that might be cited in support of our decision. The case should have been submitted to the jury for them to determine the question of whether or not there had been a performance under the contract by the plaintiff, or, if not, whether the failure to perform was due to the conduct of the defendant's son in failing to proceed with his work. If they should so find, we think the plaintiff would be entitled to a verdict. The evidence submitted to the court did not warrant the direction of a verdict.

■ The court erred in admitting in evidence the statement by the defendant that the plaintiff's agent who sold the course to his son had agreed with him and his son that the son drop the course. The burden of proving that the agent had such authority to cancel or rescind the contract would be on the defendant as the one asserting such authority. A person relying on a release of his contract by an agent must prove authority in the agent to make the release. Presumptively an agent is hired to make contracts, and not to cancel them; and a power to collect money under a contract will not raise a presumption of authority in the agent to vary the terms and accept less than the agreed price. Without evidence tending in some manner to show the actual authority of the agent, or

ratification of the alleged act by the principal, such evidence is inadmissible.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*